UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DAWN S.,

            Plaintiff,

   v.

COMMISSIONER OF SOCIAL SECURITY,

            Defendant.
_____

**DECISION AND ORDER**

1:23-CV-00628 EAW

## **INTRODUCTION**

Represented by counsel, Plaintiff Dawn S. ("Plaintiff") brings this action pursuant to Title II of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application for disability insurance benefits ("DIB"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 6; Dkt. 10), and Plaintiff's reply (Dkt. 11). For the reasons discussed below, the Commissioner's motion (Dkt. 10) is granted, and Plaintiff's motion (Dkt. 6) is denied.

## BACKGROUND

Plaintiff protectively filed her application for DIB on August 28, 2020. (Dkt. 5 at 222-28).[1] In her application, Plaintiff alleged disability beginning on November 15, 2019. (*Id.* at 26, 222). Plaintiff's application was initially denied on February 4, 2021. (*Id.* at 26, 104). A telephone hearing was held before administrative law judge ("ALJ") Bryce Baird on December 21, 2021. (*Id.* at 26, 44-88). On August 22, 2022, the ALJ issued an unfavorable decision. (*Id.* at 26-38). Plaintiff requested Appeals Council review; her request was denied on May 3, 2023, making the ALJ's determination the Commissioner's final decision. (*Id.* at 6-11). This action followed.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009)

---

[1] When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

(quotation omitted).  It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).  However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.  Disability Determination

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act.  *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986).  At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity.  *See* 20 C.F.R. § 404.1520(b).  If so, the claimant is not disabled.  If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities.  *Id*. § 404.1520(c).  If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled."  If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings").  *Id*. § 404.1520(d).  If the impairment meets or medically

equals the criteria of a Listing and meets the durational requirement (*id*. § 404.1509), the claimant is disabled.  If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments.  *See id*. § 404.1520(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work.  *Id*. § 404.1520(f).  If the claimant can perform such requirements, then he or she is not disabled.  If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled.  *Id*. § 404.1520(g).  To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience.  *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I.     The ALJ's Decision

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. § 404.1520.  Initially, the ALJ determined that Plaintiff met the insured status requirements of the Act through December 31, 2025.  (Dkt. 5 at 28).  At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since November 15, 2019, the alleged onset date. (*Id*.).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of: cervical disc disease status post fusion, lumbar radiculopathy, degenerative disc disease of the thoracic spine, anxiety, and depression. (*Id.* at 29). The ALJ further found that Plaintiff's medically determinable impairments of stress incontinence and history of alcohol abuse were non-severe. (*Id.*).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id.*). The ALJ particularly considered the criteria of Listings 1.15, 12.04, and 12.06 in reaching his conclusion. (*Id.* at 29-31).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), except that Plaintiff can:

> sit, stand or walk 6 hours in an 8 hour workday; occasionally climb ramps or stairs; never climb ladders, ropes or scaffolds; occasionally stoop, kneel, crouch; never crawl; frequently reach bilaterally. She must never be exposed to excessive vibration or to hazards such as unprotected heights or moving machinery. Work is limited to simple, routine tasks that can be learned after a short demonstration or within 30 days. Work [must] not involve[] any production rate or casework. Work must allow for variations in productivity. She must have no more than frequent interaction with the public, coworkers and supervisors.

(*Id.* at 31). At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. (*Id.* at 36).

At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of cleaner, price marker, and collator.

(*Id.* at 37-38). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act. (*Id.* at 38).

## II.  The Commissioner's Determination is Supported by Substantial Evidence and Free from Legal Error

Plaintiff asks the Court to reverse or, in the alternative, to remand this matter to the Commissioner, arguing that (1) the ALJ failed to properly evaluate medical opinion evidence, and (2) the ALJ was unduly adversarial at the hearing and in his decision. The Court has considered Plaintiff's arguments and, for the reasons discussed below, finds that they are without merit, and that the Commissioner's decision is supported by substantial evidence in the record.

### A.  Assessment of Medical Opinion Evidence

The Court turns first to Plaintiff's arguments relating to the ALJ's assessment of the opinions of Anil Mathur, M.D., Plaintiff's treating physician.

In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). It is well-settled that an ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in his decision." *Id*. However, an ALJ is not a medical professional, and "is not qualified to assess a claimant's RFC on the basis of bare medical findings." *Ortiz v. Colvin*, 298 F. Supp. 3d 581, 586 (W.D.N.Y. 2018) (quotation omitted). In other words:

> An ALJ is prohibited from 'playing doctor' in the sense that 'an ALJ may not substitute his own judgment for competent medical opinion. . . .' This rule is most often employed in the context of the RFC determination when the claimant argues either that the RFC is not supported by substantial

evidence or that the ALJ has erred by failing to develop the record with a medical opinion on the RFC.

*Quinto v. Berryhill*, No. 3:17-cv-00024 (JCH), 2017 WL 6017931, at *12 (D. Conn. Dec. 1, 2017) (citations omitted). "[A]s a result[,] an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." *Dennis v. Colvin*, 195 F. Supp. 3d 469, 474 (W.D.N.Y. 2016) (quotation and citation omitted). However, at bottom, "[a]n RFC finding is administrative in nature, not medical, and its determination is within the province of the ALJ, as the Commissioner's regulations make clear." *Curry v. Comm'r of Soc. Sec.*, 855 F. App'x 46, 48 n.3 (2d Cir. 2021).

Under the regulations applicable to Plaintiff's claim, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a). Instead, when a medical source provides one or more medical opinions, the Commissioner will consider the persuasiveness of those medical opinions using the factors listed in paragraphs (c)(1) through (c)(5) of the applicable sections. *Id*. Those factors include: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treatment relationship, the frequency of examinations, purpose and extent of the treatment relationship, and the examining relationship; (4) specialization; and (5) any other factors that "tend to support or contradict a medical opinion or prior administrative medical finding." *Id*. at § 404.1520c(c).

When evaluating the persuasiveness of a medical opinion, the most important factors are supportability and consistency. *Id*. at § 404.1520c(a). With respect to

"supportability," the regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* at § 404.1520c(c)(1). With respect to "consistency," the regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources . . ., the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* at § 404.1520c(c)(2).

The ALJ must articulate his consideration of the medical opinion evidence, including how persuasive he finds the medical opinions in the case record. *Id*. at § 404.1520c(b). Specifically, the ALJ must explain how he considered the "supportability" and "consistency" factors for a medical source's opinion. *Id.* at § 404.1520c(b)(2). The ALJ may—but is not required to—explain how he considered the remaining factors. *Id*.

Dr. Mathur provided a medical opinion on August 17, 2021, relating to Plaintiff's chronic cervical strain, cervical radiculopathy, left shoulder strain, chronic lumbar strain, lumbar radiculopathy, left knee strain, anxiety, and depression. (Dkt. 5 at 700-704). Dr. Mathur opined that Plaintiff's conditions and restrictions began on November 15, 2019 (*id.* at 704), the date of a motor vehicle accident in which Plaintiff's neck, mid and low back were injured (*see, e.g., id.* at 32). Dr. Mathur noted that Plaintiff has constant pain in multiple joints and opined that her symptoms would interfere with her attention over two-thirds of each day. (*Id.* at 700). Dr. Mathur indicated that Plaintiff could sit, stand, and

walk for less than fifteen minutes at one time and for less than one hour in an eight-hour workday. (*Id.* at 701-02). He opined that she required the use of a walker to stand, balance, and walk. (*Id.*). She would need opportunities to rest during the workday as a result of her pain. (*Id.* at 702). Dr. Mathur opined that Plaintiff could never lift less than 10 pounds and never balance, stoop, kneel, crouch, crawl, or reach, and could occasionally hand, finger, or feel. (*Id.* at 703). He stated that she is totally disabled and unable to work. (*Id.* at 704).

The ALJ explained his reasons for finding Dr. Mathur's opinion to be "not persuasive" as follows:

> According to Dr. Mathur, [Plaintiff] is totally disabled and . . . she would be absent from work more than four days a month due to her symptoms (18 F/2). He determined that [Plaintiff] would have extreme limitations such as never balancing, stooping, kneeling, crouching or crawling or lifting and carrying any weight at all (18 F/4-5). Finally, Dr. Mathur stated that [Plaintiff] needed a walker (18F/4). This document is not persuasive as the opinions mentioned are neither supported by the handwritten notes of Dr. Mathur nor consistent with the medical record. For example, they are contradicted by exhibit F1/5 (3/26/20) and 1F/66 (10/20) noting no assistive devices; exhibits 2F/28 and 4F/4 identifying [Plaintiff] with a normal gait. There are references to "sometimes using a walker at home", and one reference to using a walker on one occasion at the chiropractor, but there is no script for a walker. Further, the statement by Dr. Mathur identifying [Plaintiff] as totally disabled is also

not persuasive since conclusory opinions involve issues reserve[d] to the Commissioner (20 CFR 404.1527(e)).

(*Id.* at 36).

Plaintiff argues that the ALJ failed to properly evaluate the supportability and consistency of Dr. Mathur's opinion. The Court disagrees. The ALJ's assessment of Dr. Mathur's opinion was proper and well-supported by the evidence.

Plaintiff suggests that the ALJ placed undue emphasis on Dr. Mathur's opinion that she requires a walker to stand, balance, and walk. As noted, the ALJ highlighted the inconsistency between that opinion and treatment records from Dr. Mathur and other providers that indicate Plaintiff had a normal gait or used no assistive devices, as well as the fact that Dr. Mathur had never prescribed the use of such a device in the course of his treatment of Plaintiff. Plaintiff argues that by emphasizing this one contradiction, "the ALJ did not explain why he rejected *the balance* of this opinion," and "essentially threw this opinion out with the bathwater." (Dkt. 6-1 at 15) (emphasis in original).

But Plaintiff overstates the ALJ's conclusions. The ALJ stated Dr. Mathur's opinions were not persuasive because "the opinions mentioned are neither supported by the handwritten notes of Dr. Mathur nor consistent with the medical record," and he used the opinion regarding the use of a walker as one example. This example was a valid consideration because although Dr. Mathur indicated in the opinion that Plaintiff required a walker to both stand/balance (Dkt. 5 at 701), and to walk/ambulate (*id.* at 702), his own records did not reflect that requirement or any prescription for such device. Moreover, as noted by the ALJ, although there are some notations in the administrative record reflecting

Plaintiff's occasional use of a walker at home,[2] records from other providers during the relevant time period indicate that Plaintiff did not use an assistive device. (*See id.* at 326 (March 26, 2020), 375 (July 13, 2020), 387 (August 27, 2020)). In addition, records throughout the relevant time period reflect Plaintiff's normal gait. For example, treatment records from Plaintiff's orthopedic surgeon dated March 24, 2020 (*id.* at 422), July 9, 2020 (*id*. at 449), September 23, 2020 (*id.* at 583), October 22, 2020 (*id.* at 577) and January 13, 2021 (*id.* at 653), all indicate that Plaintiff had a "normal and well-balanced gait." Similarly, the report from Plaintiff's December 22, 2020, stage agency consultative examination indicates "[g]ait normal", that Plaintiff "[c]an walk on heels and toes without difficulty," and "[u]sed no assistive devices." (*Id.* at 618). It was therefore not improper for the ALJ to conclude that Dr. Mathur's opinions about Plaintiff's need for walker to walk or stand were not supported by his own records or consistent with the records from other providers that reflected a normal gait during the same time period, and to emphasize this inconsistency in assessing Dr. Mathur's opinions.

Plaintiff notes that Dr. Mathur's treatment records also show abnormal objective findings supporting his opinions that were not sufficiently discussed or considered by the ALJ. Contrary to Plaintiff's suggestion, it is clear from the written determination that the ALJ considered Dr. Mathur's records and credited Plaintiff's reports of persistent pain when assessing the RFC and in limiting her to light work with additional limitations. The ALJ is not required to discuss every shred of evidence in the record in reaching a

---

[2] At the hearing, Plaintiff confirmed that a walker had never been prescribed for her and that the walker she used belonged to her boyfriend, who previously had hip surgery. (Dkt. 5 at 78).

conclusion—rather, the ALJ must articulate how the disability determination is supported by substantial evidence, and provide an explanation that allows for meaningful review on appeal. *See Brault v. Comm'r of Soc. Sec.*, 683 F.3d 443, 448 (2d Cir. 2012) ("Although required to develop the record fully and fairly, an ALJ is not required to discuss every piece of evidence submitted." (citation omitted)). The Court is satisfied that he has done so here.

In addition, the ALJ explained why he credited opinions from other medical providers. For example, he addressed the opinions of state medical experts J. Koenig, M.D., on reconsideration (Dkt. 5 at 116-19), and J. Lawrence, at the initial level of review (*id.* at 98-101). Both opined that Plaintiff was capable of performing light work and could stand or walk for 6 hours in an 8 hour workday. (*Id.* at 98-99, 117). The ALJ explained his reasoning for finding these opinions persuasive:

> State medical experts J. Koenig, MD, from the reconsideration level of review and J. Lawrence, MD, from the initial level of review, both opined that [Plaintiff] was capable of lifting 20 pounds occasionally and 10 pounds frequently and could perform postural activities, such as stooping, kneeling and crouching at a limited level (3A/15, 1A/11). This opinion is persuasive. The opinions of Dr. Koenig and Dr. Lawrence are supported by the evidence they reviewed, such as physical examination of the claimant showing no less than 4+/5 strength in all aspects of the upper extremities (4F/15). The opinions of both Dr. Koenig and Dr. Lawrence are also consistent with the medical record. Office visits with the orthopedic surgeon indicated [Plaintiff's] pain had improved to a level of 5/10 on the pain scale, but still remain sufficient as to require treatment as expansion, flexion and rotation

of the neck and movement of the arms above the head continue to cause pain (10 F/2).

(*Id.* at 35).

The ALJ also addressed the opinion offered by consultative examiner Nikita Dave, M.D.[3] (*Id.* at 617-21). Dr. Dave conducted her examination of Plaintiff on December 20, 2020, shortly after Plaintiff's September 2020 spine surgery. The ALJ explained his reasoning for finding Dr. Dave's opinion partially persuasive:

> The opinion offered by consultative examiner [Nikita Dave], MD, is only partially persuasive because although [her] examination yielded some useful objective medical information, it was admittedly performed while [Plaintiff] was still under surgical restrictions due to her neck surgery (7F/4). Further, Dr. [Dave] failed to offer any insight into [Plaintiff's] limitations in performing work-related activities. Nonetheless, it was stated that [Plaintiff's] lumbar extension was 5°, flexion 80°, lateral flexion 20° and rotation fall bilaterally (7F/3). [Plaintiff] also has a SLR negative bilaterally and strength was 5/5 in the upper and lower extremities (7F/4).

(*Id.* at 35-36).

Taking the ALJ's decision as a whole, the Court concludes that the ALJ satisfied his obligations to assess the consistency and supportability of Dr. Mathur's opinions. *Delisa v. Comm'r of Soc. Sec.,* No. 22-CV-00312-HKS, 2024 WL 2274001, at *3 (W.D.N.Y. May 20, 2024) ("Supportability focuses on the fit between medical opinion offered by the source and the underlying evidence presented by the source to support that opinion, while consistency focuses on how well a medical source opinion is supported by the entire record."); *Joseph L. v. Kijakazi*, No. 3:22-cv-183 (TOF), 2023 WL 1432630, at *4 (D. Conn. Feb. 1, 2023) ("Discussing supportability requires an ALJ to 'compare the

---

[3] The ALJ mistakenly transposed Dr. Dave's name and called her Dave Nikita, M.D. This error does not affect the Court's analysis.

medical source's opinion to his own objective medical evidence.'") (quoting *Coleman v. Kijakazi*, No. 3:20-cv-1588 (VLB), 2022 WL 766127, at \*8 (D. Conn. Mar. 14, 2022)). Plaintiff's arguments amount to no more than a disagreement with the ALJ's assessment of Dr. Mathur's opinion. Accordingly, remand is not required on this basis.

### B. Bias

Next Plaintiff contends that the ALJ was unnecessarily hostile to Plaintiff at the hearing and in his decision, violating the non-adversarial principles of his duties. The Court disagrees.[4]

"An ALJ must conduct disability benefit proceedings in an 'informal, non-adversarial manner.'" *Cianfano v. Kijakazi*, No. 22CV4801(MKV)(RWL), 2023 WL

---

[4] The Commissioner argues that Plaintiff failed to exhaust her administrative remedies with respect to this claim. The Commissioner relies on 20 C.F.R. § 404.940, which provides that "[a]n [ALJ] shall not conduct a hearing if he or she is prejudiced or partial with respect to any party or has any interest in the matter pending for decision," and requires a claim to notify the ALJ of an objection at the "earliest opportunity." But this regulation has not been held to preclude district court consideration of claims similar to those Plaintiff presents here. *See Maldonado v. Berryhill*, No. 16-CV-165 (JLC), 2017 WL 946329, at \*29 (S.D.N.Y. Mar. 10, 2017) ("The Commissioner's threshold arguments that the Court is unable to review an ALJ's decision for bias are unpersuasive. . . . [C]ourts in this Circuit have held that '[t]he failure to raise [the issue of ALJ bias] to the Appeals Council is not jurisdictional and does not preclude this Court from reviewing Plaintiff's claim of bias.'" (quoting *Trimm v. Colvin*, No. 7:13-CV-00961 (MAD), 2015 WL 1400516, at \*4 (N.D.N.Y. Mar. 26, 2015))); *Pronti v. Barnhart*, 339 F. Supp. 2d 480, 495 (W.D.N.Y. 2004) ("The failure-to-exhaust defense advanced by the Commissioner is not persuasive. The Commissioner suggests that there is an existing regulation, at 20 C.F.R. § 404.940, dealing with bias and that plaintiffs should be barred here because they failed to follow its procedures. I am not persuaded. First of all, that provision requires that the issue of bias be raised at 'the earliest opportunity.' Plaintiff Ballard raised the bias issue first at the Appeals Council level, and plaintiff Pronti raised the issue of bias in the first instance in the district court. Given the evidence upon which the bias claim is based, I find that both plaintiffs Pronti and Ballard raised the issue of bias 'at the earliest opportunity.'"). For these reasons, the Court will consider the substantive merit of Plaintiff's contention.

6455758, at *9 (S.D.N.Y. Aug. 24, 2023) (quoting 20 C.F.R. § 416.1400(b)), *report and recommendation adopted*, 2023 WL 5950687 (S.D.N.Y. Sept. 12, 2023); *see also Montes v. Saul*, 502 F. Supp. 3d 832, 845 (S.D.N.Y. 2020) (noting "well-settled precedent in this Circuit, holding that SSA proceedings are fundamentally non-adversarial," and "SSA regulations make clear that '[i]n making a determination or decision in [a claimant's] case, [the SSA] conduct[s] the administrative review process in an informal, non-adversarial manner'" (quoting 20 C.F.R. §§ 404.900(b), 416.1400(b))).

To demonstrate that an ALJ's bias denied a claimant his right to a fair hearing, a showing that "the ALJ exhibited a 'deep-seated favoritism or antagonism that would make a fair judgment impossible,'" is required. *Jones v. Comm'r of Soc. Sec.*, No. 1:18-CV-0526 (WBC), 2019 WL 13219347, at *6 (W.D.N.Y. July 8, 2019) (quoting *Whitfield v. Astrue*, 476 F. App'x 408, 409 (2d Cir. April 19, 2012)). There is a presumption than an ALJ is unbiased and as a result, any allegation of bias must be clear and not based on wholly conclusory allegations or speculation. *Card v. Astrue*, 752 F. Supp. 2d 190, 191 (D. Conn. 2010).

Plaintiff contends that the ALJ's questioning of her at the hearing about the facts of her car accident and mental health treatment history evinced hostility. Specifically, she notes that the ALJ questioned her more than once about a chiropractor's note indicating that Plaintiff went to the hospital after the accident, which contradicted her testimony that she went to work that day. He also asked for a copy of the police report from the date of the motor vehicle accident in order to corroborate her testimony regarding the facts of the accident. In addition, the ALJ questioned Plaintiff's testimony about her receipt of mental

health treatment and whether she had spoken to any medical provider or counselor about her mother being ill. While an ALJ is not required to expressly reconcile every inconsistency in the administrative record, it is well within the purview of the ALJ's responsibilities to explore any potential discrepancies contained therein. The record does not demonstrate that this questioning by the ALJ—testing the accuracy of the information relayed by Plaintiff which is fully within the scope of the ALJ's authority—rose to a level of antagonism so as to support a claim of bias. *See Brogan v. Comm'r of Soc. Sec.*, 671 F. App'x 12, 13 (2d Cir. 2016) (rejecting Plaintiff's argument "that the ALJ's post-hearing remarks critical of Brogan's counsel evince bias that infected his disability determination" because "[l]ike the district court, we are not persuaded that those stray remarks—though ill-advised—manifest 'a deep-seated favoritism or antagonism that would make a fair judgment impossible.'" (quoting *Reddy v. Commodity Futures Trading Comm'n*, 191 F.3d 109, 119 (2d Cir. 1999)).

Plaintiff also argues that the ALJ's questioning about a February 17, 2021 treatment record from Plaintiff's first visit at Williamsville Psychiatry with Fred Kubas, PA-C, evidences bias. (Dkt. 5 at 673). In the treatment record, PA-C Kubas wrote:

> States she has something else to talk with me about. States her initial disability claim was denied and she is on appeal now. She heard that having a mental health diagnosis will help her case and wants to know what she should do about that. Informed she has to be established for a minimum of 6 months before I would even consider disability. Is not in therapy and has never been in the past. Made recommendation to establish with psychology.

(*Id.*). At the hearing, the ALJ asked Plaintiff, "[s]o is one of the reasons why you went to the psychiat[rist] was to help your disability case?" to which Plaintiff replied that it was not and that she had just advised PA-C Kubas that she was applying for disability and asked

if he thought she was disabled. (*Id.* at 65-66). In referencing this record in his decision, the ALJ wrote, "possibly the most telling information regarding [Plaintiff's] mental impairment severity is her comment to her mental health provider at her very first visit in February 2021 that she heard having a mental health diagnosis would help her case and wanted to know what she could do about that." (*Id.* at 34). While Plaintiff views the ALJ's statements as an attack on her character, the Court disagrees. It is the ALJ's task to assess credibility and the Court finds no error in the ALJ's consideration of Plaintiff's statement to her provider and explanation she provided for it at the hearing. *See Giuliano v. Comm'r of Soc. Sec.*, No. 20-CV-5603(EK), 2023 WL 6214159, at *7 (E.D.N.Y. Sept. 25, 2023) ("Giuliano's suggestion that the ALJ evinced bias against him — by 'browbeat[ing]' a medical expert 'into recanting' and being 'surprisingly open in voicing his hostility to Dr. Hansen,'. . . — is without merit. At the hearing, the ALJ acted appropriately, as the trier of fact, in questioning Dr. Hansen and clarifying his opinion as to what the evidence showed before and after December 31, 2015 — the critical date in this case. The record provides no other indication of any bias. Without something grounded in the record, Giuliano's allegations cannot sustain a claim that the ALJ's bias denied him a fair hearing."); *see also Joshua T. v. Comm'r of Soc. Sec.*, No. 19-CV-1355S, 2021 WL 1099614, at *4 (W.D.N.Y. Mar. 23, 2021) ("Medical records indicating doctors' suspicions of malingering are properly considered by ALJ's in making their credibility

determinations." (citing *Bruno v. Colvin*, No. 2:15-CV-163, 2016 WL 3661243, at *3 (D. Vt. July 5, 2016))).

Further, despite Plaintiff's claim of bias and hostility, it is clear from the ALJ's decision that he did credit portions of her testimony in determining the RFC. That he did not fully credit her testimony does not demonstrate a claim of bias or suggest that there was a gap in the record providing a basis for reversal. See *Janes v. Berryhill*, 710 F. App'x 33, 34 (2d Cir. 2018) (the ALJ "is not required to develop the record any further when the evidence already presented is adequate for [the ALJ] to make a determination as to disability") (internal citations omitted).

In sum, the Court finds that the ALJ appropriately based his assessment of Plaintiff's RFC on the evidence as a whole, including the medical opinions and Plaintiff's own testimony. Accordingly, there is no basis for the Court to disturb the Commissioner's finding of non-disability.

## CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 10) is granted, and Plaintiff's motion for judgment on the pleadings (Dkt. 6) is denied. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated: June 3, 2024
Rochester, New York